**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 1, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

FIRESTORM PYROTECHNICS,
INC.,

      Petitioner,

v.                                                            No. 21-9572

STEVEN M. DETTELBACH,* in his
official capacity as Director, Bureau
of Alcohol, Tobacco, Firearms and
Explosives and BUREAU OF
ALCOHOL, TOBACCO, FIREARMS
AND EXPLOSIVES,

      Respondents.

_____

**On Petition for Review of an**
**Order from the Bureau of Alcohol, Tobacco, Firearms and Explosives**
**Docket No. BATF-1:9-UT-027-51-9G-00440**

_____

Dillon P. Olson of James Dodge Russell & Stephens, P.C., Salt Lake City,
Utah, for Petitioner.

Steven H. Hazel, Attorney (Brian M. Boynton, Principal Deputy Assistant
Attorney General; Abby C. Wright, Attorney; United States Department of
Justice; Pamela Hicks, Chief Counsel; Melissa Anderson, Associate Chief
Counsel; Bureau of Alcohol, Tobacco, Firearms and Explosives, with him on
the brief), Washington, District of Columbia, for Respondents.

_____

     * Pursuant to Fed. R. App. P. 43(c)(2), Marvin G. Richardson is
replaced by Steven M. Dettelbach as Director of the Bureau of Alcohol,
Tobacco, Firearms and Explosives, effective July 13, 2022.

_____

Before **CARSON**, **LUCERO**, and **ROSSMAN**, Circuit Judges.

_____

**ROSSMAN**, Circuit Judge.

_____

Petitioner Firestorm Pyrotechnics, Inc. ("Firestorm") seeks review of a decision by the Acting Director ("Director") of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF" or "Bureau") revoking Firestorm's license to import and sell fireworks. *See* 18 U.S.C. § 843(d). Firestorm challenges the revocation decision, maintaining the Director misapplied the willfulness standard in 27 C.F.R. § 771.42 and 27 C.F.R. § 771.5 and contending further the Director's decision is unsupported by substantial evidence. Exercising jurisdiction under 18 U.S.C. § 843(e)(2), we deny the petition for review.

## BACKGROUND[1]

Firestorm is a fireworks distribution and display company in Springville, Utah. The company was founded in 2006 by Steven Shriber, who serves as Firestorm's President. A small, successful enterprise, Firestorm grew from a company grossing about $70,000 a year to one conducting approximately $1,000,000 in business annually. It has put on fireworks displays across Utah

_____

[1] We draw the facts from the administrative record ("AR"), unless otherwise noted.

2

and neighboring states. Firestorm has four employees, including Mr. Shriber and his son Scott Shriber.

Because Firestorm handles commercial-grade fireworks, federal law requires the company to maintain an explosives license. 27 C.F.R. § 555.41(a)(1) (2023). As part of the licensure process, the ATF conducted an initial qualification inspection of Firestorm on May 27, 2010. That same day, Mr. Shriber signed an Acknowledgment of Federal Explosives Regulations ("Acknowledgment"). The explosives regulatory regime is comprehensive, and the Acknowledgment provided an index of federal regulations governing licensure, including all of those at issue in this case. The Acknowledgment stated the ATF investigator had "explained [the regulatory and compliance] information to [Mr. Shriber]." AR at 476. Firestorm received its explosives license in June 2010. AR at 4; 208.

In 2012, after an ATF license renewal inspection,[2] Firestorm was cited for failing to maintain accurate magazine inventories, in violation of 27 C.F.R. § 555.127. The ATF also identified a violation of 27 C.F.R. § 555.45(c)(1)(iv), requiring licensees to submit Employee Possessor Questionnaires for all employees who will handle explosives. After the 2012

---

[2] Federal law provides the ATF authority to conduct renewal and compliance inspections of licensees. *See* 18 U.S.C. §§ 843(b)(4), (f). Explosives licenses are valid for three-year periods. 27 C.F.R. § 555.51(b) (2023).

inspection, Firestorm signed another Acknowledgment certifying it would "be responsible for familiarizing [it]self with all of the laws and regulations governing [its] licensed/permitted business." AR at 480.

A few years later, in 2016, the ATF conducted another renewal inspection of Firestorm and again discovered compliance problems. Firestorm was cited for violating the same magazine inventory regulation as in 2012, 27 C.F.R. § 555.127. The ATF also determined Firestorm failed to adhere to storage requirements for thousands of pounds of explosives, violating 27 C.F.R. § 555.29; transferred explosives to unpermitted and unlicensed entities in violation of 27 C.F.R. § 555.106(a); failed to file a report for the theft or loss of explosive materials within 24 hours as required by 27 C.F.R. § 555.30(a); and failed to maintain accurate acquisition records of imported or acquired explosives, violating 27 C.F.R. § 555.122(b). After the 2016 inspection, Firestorm signed a third Acknowledgement.

But this time, the ATF also warned Firestorm its explosives license might be revoked. The ATF gave Firestorm a Notice of Contemplated Denial of Renewal or Revocation of License or Permit ("Notice"), which formally advised the company that license revocation was a possibility because the Bureau had "reason to believe that Firestorm . . . willfully violated the provisions of Chapter 40, Title 18, United States Code, and the regulations issued thereunder, 27 C.F.R. Part 555." AR at 496. The Notice provided

4

summary details of the 2012 and 2016 inspections and the violations identified by the ATF each time. The Notice further explained Firestorm would have an opportunity to respond but that, even "after such response," the Bureau still had the authority to rescind Firestorm's license. AR at 495.

After receiving the Notice, Firestorm "acknowledge[d] that certain discrepancies and issues have been identified" and "recognize[d] its obligation to fully comply with the regulations." AR at 512. Firestorm proposed measures to observe federal regulations going forward and explained how its planned efforts were intended to ensure future compliance. On June 15, 2017, after conferring with Steven and Scott Shriber and Firestorm's counsel about the violations and discussing Firestorm's proposed compliance efforts, the ATF chose not to pursue license revocation. During that meeting, the ATF's Denver Field Division Director of Industry Operations "advised [Firestorm] that violations cited during [the 2016] inspection were grounds for denial of the renewal application." AR at 526. The ATF warned Firestorm that, given its past compliance problems, "future violations, repeat or otherwise, could be viewed as willful [under 27 C.F.R. § 771.42] and may result in the denial of the renewal application." Firestorm was advised to "anticipate further inspections to ensure [its] compliance." AR at 529. Firestorm again signed—

as it had in 2010, 2012, and 2016—an Acknowledgment of Federal Explosives Regulations.

The ATF's inspectors returned to conduct a compliance inspection in June 2018.[3] A three-day physical inventory at Firestorm's facility in Delta, Utah was followed by several months of follow-up investigation by ATF: interviews with persons to whom Firestorm had distributed explosives; assessments of storage practices at the Delta and Springville locations; inventory recounts; and meetings with Steven and Scott Shriber. The ATF found dozens of violations, including Firestorm's failure to comply with the same inventory, storage, and transfer requirements cited during past inspections of its facility.

The Bureau issued Firestorm a Notice of Revocation on March 27, 2019. The Notice of Revocation said Firestorm "willfully violated" the law and collected the alleged violations into fifteen Grounds for Revocation. AR at 267-73. The ATF determined all fifteen violations were "willful"

---

[3] Before the ALJ and on appeal, Firestorm expressed frustration with the timing of the 2018 inspection, which occurred in mid-June, weeks before Independence Day, during "the busiest time of the year for Firestorm." AR at 441, 443; Appellant's Br. at 12, 24. We can appreciate Firestorm's position. The ATF inspector "did not factor the impact of the inspection on [Firestorm]'s business operations into her decision" to inspect at that time, and the ATF did not prevent Firestorm from moving items from magazine to magazine. AR at 433. We would be unsurprised to find these circumstances complicating for both the company and the inspectors, but, as we will explain, we do not pass on the inventory violations.

under 27 CFR §§ 771.42 and 771.5. And nine of the fifteen grounds were classified as repeat violations.[4]

_____

[4] The Grounds for Revocation, numbered I-XV, included:

I.      Violations of 18 U.S.C. § 842(k) and 27 C.F.R. § 555.30(a) (failure to report missing explosives);

II.     Violations of 18 U.S.C. § 842(f) and 27 C.F.R. § 555.127 (failure to maintain an accurate daily summary of magazine transactions);

III.    Violations of 18 U.S.C. § 842(f) and 27 C.F.R. § 555.122(b)(2) (failure to record manufacturer name into acquisition records);

IV.     Violations of 18 U.S.C. § 842(f) and 27 C.F.R. § 555.122(b)(3) (failure to record manufacturer's marks into acquisition records);

V.      Violations of 18 U.S.C. § 842(f) and 27 C.F.R. § 555.122(b)(4) (failure to record correct quantity of explosives into acquisition records);

VI.     Violations of 18 U.S.C. § 842(f) and 27 C.F.R. § 555.122(b)(5) (failure to record the description and size of acquired explosives);

VII.    Violations of 18 U.S.C. § 842(j) and 27 C.F.R. §§ 555.22(b)(3), 555.29 (failure to notify the ATF of emergency variances from the requirements and temporary overnight storage);

VIII.   Violations of 18 U.S.C. § 842(j) and 27 C.F.R. § 555.29 (failure to properly store explosives);

IX.     Violations of 18 U.S.C. § 842(f) and 27 C.F.R. § 555.122(b)(1) (failure to record dates of explosives acquisitions);

X.      Violations of 18 U.S.C. § 842(f) and 27 C.F.R. § 555.122(c)(1) (failure to record dates of explosives dispositions);

XI.     Violations of 18 U.S.C. § 842(f) and 27 C.F.R. § 555.122(c)(2) (failure to record manufacturer's brand name and country of origin);

XII.    Violations of 18 U.S.C. § 842(f) and 27 C.F.R. § 555.122(c)(3) (failure to record manufacturer's marks of transferred explosives);

XIII.   Violations of 18 U.S.C. § 842(f) and 27 C.F.R. § 555.122(c)(4) (failure to record quantity of transferred explosives);

Firestorm requested a hearing to contest the Notice of Revocation. 27 C.F.R. § 555.71 (2023); AR at 175. A three-day hearing was conducted by an Administrative Law Judge ("ALJ") in mid-September 2020. Ten witnesses testified—seven for the Bureau, three for Firestorm. The burden was on the ATF to prove, by a preponderance of the evidence, that Firestorm was no longer entitled to an explosives license. *See* 27 C.F.R. § 771.80 (2023) ("In hearings on the revocation . . . of a license or permit, the burden of proof is on the Government to show that the Director of Industry Operations had reason to believe that the licensee or permittee is not entitled to a permit or license . . . . The Government must meet this proof by a preponderance of the evidence."); AR at 224.

Here, the grounds for the revocation were Firestorm's alleged "willful[] violation[s] [of] . . . 27 C.F.R. part 555," the regulatory scheme governing commerce in explosives. 27 C.F.R. § 771.42 (2023). The ATF

---

XIV.  Violations of 18 U.S.C. § 842(f) and 27 C.F.R. § 555.122(c)(5) (failure to record description and size of transferred explosives); and

XV.  Violations of 18 U.S.C. § 842(b) and 27 C.F.R. 555.106(a) (failure to ensure explosives were transferred only to authorized persons).

Grounds I, II, III, IV, V, VI, VIII, IX, and XV were identified as repeat violations for which Firestorm had previously been cited after the 2016 inspection (and the 2012 inspection, in the case of Ground II). AR at 267-73. Ground VII was withdrawn by the ATF during the agency proceedings. AR at 15.

emphasized "[o]ne willful violation is sufficient to justify" revocation under 27 C.F.R. § 771.42 and that willfulness does "not require a finding of bad faith or motive." AR at 177. According to the Bureau, it could satisfy its burden of proof by showing Firestorm knew of, but was indifferent to, the applicable law. Firestorm claimed there was no evidence to show any violations resulted from its "purposeful disregard of known legal duties." AR at 196. According to Firestorm, it was "a small business . . . doing [its] best to comply with the regulations." AR at 196.

A few months later, in a written decision, the ALJ determined Firestorm's license should be revoked. Based on the evidence developed at the hearing, the ALJ concluded Firestorm committed willful violations of federal explosives regulations. According to the ALJ, Firestorm had acknowledged its understanding of the law yet repeatedly violated its known legal duties:

> [S]ubstantial evidence has been developed in the hearing record that establishes that the President and responsible person for Firestorm was aware of the legal obligations, and purposely disregarded them or was plainly indifferent to the requirements. Moreover, the record has established a pattern of repeated violations with knowledge of the law's requirements. Accordingly, it has been established that Firestorm willfully violated provisions of Chapter 40 of the United States Code. AR at 157.

9

The Director, Industry Operations ("DIO") then entered an order confirming the revocation, *see* 27 C.F.R. § 555.76(b) (2023), and Firestorm timely appealed to the Director of the ATF, *see* 27 C.F.R. § 555.79 (2023).[5]

In its appeal to the Director, Firestorm challenged the ALJ's finding of willfulness and claimed the government had denied the company an opportunity to comply with the regulatory regime.

In August 2021, the Director affirmed the Bureau's decision to revoke Firestorm's explosives license. Rejecting Firestorm's contrary argument, the Director concluded the ALJ "used the correct willfulness standard in determining that Firestorm willfully" committed the violations. AR at 23. The Director pointed to the applicable regulations' "Meaning of terms" provision, 27 C.F.R. § 771.5, which defined "willfulness" as "[t]he plain indifference to, or purposeful disregard of, a known legal duty" which "may be demonstrated by, but does not require, repeat violations involving a known legal duty." AR at 20.

---

[5] The federal explosives laws provide the Attorney General of the United States the authority to revoke an explosives license if they believe the licensee has violated any statute or regulation relating to the importation, manufacture, distribution, and storage of explosives. 18 U.S.C. § 843(d). The Attorney General's authority under this section has been delegated to the Director of the ATF, 28 C.F.R. § 0.130(a)(1) (2023), who, in turn, has delegated revocation authority to the DIO, 27 C.F.R. §§ 555.71-555.83 (2023).

The Director referenced, too, well-developed explosives and firearms caselaw invoking this same willfulness standard. Here, the Director observed "Firestorm knew of its recordkeeping and storage obligations; Steven Shriber, on behalf of Firestorm, acknowledged he understood the Federal explosives laws and regulations on four separate occasions, in 2010, 2012, 2016 and 2017." AR at 23. The record showed, despite the many instances where Firestorm acknowledged its awareness and understanding of the governing federal explosives regulations, the company violated the law, including repeatedly violating many of the same regulations. Firestorm asserted its "ongoing, reasonable, and good-faith efforts to comply" should be factored into, and negate, the willfulness determination. The Director acknowledged Firestorm's compliance efforts but concluded they were "wholly irrelevant" to whether Firestorm's violations of federal explosives regulations demonstrated "willfulness" under the regulatory regime. AR at 22, 25-27. The Director upheld the revocation.

Firestorm timely petitioned for review in this court.

## STANDARD OF REVIEW

We review the Director's revocation under the Administrative Procedure Act ("APA"). *See* 18 U.S.C. § 843(e)(2) (providing for "judicial review of [the ATF's] denial or revocation, pursuant to sections 701-706 of title 5, United States Code"). "The APA requires courts to consider agency

action in conformity with the agency's statutory grant of power, and agency action is unlawful if it is 'in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.'" *Sinclair Wyo. Refin. Co.* v. *EPA*, 887 F.3d 986, 990 (10th Cir. 2017) (quoting 5 U.S.C. § 706(2)(C)); *cf. Vineland Fireworks Co.* v. *Bureau of Alcohol, Tobacco, Firearms & Explosives*, 544 F.3d 509, 514 (3d Cir. 2008) ("We review the decision using the judicial standards of review set forth in 5 U.S.C. § 706.").

Review under the APA requires a "searching but careful" inquiry into the basis for the agency's action, but our review is "ultimately a narrow one." *Maier* v. *EPA*, 114 F.3d 1032, 1039 (10th Cir. 1997). We will not displace an agency action "unless it is procedurally defective, arbitrary or capricious in substance, or manifestly contrary to the statute." *U.S. Magnesium, LLC* v. *EPA*, 690 F.3d 1157, 1164 (10th Cir. 2012) (internal quotation marks and citations omitted).

## DISCUSSION

Firestorm advances two appellate challenges to the Director's decision to revoke its explosives license. First, Firestorm argues the Director misapplied the willfulness standard in 27 C.F.R. § 771.42. Second, Firestorm contends the Director's revocation order is not supported by substantial evidence. We reject both arguments.

# I

## The Director Did Not Misapply The Willfulness Standard In 27 C.F.R. § 771.42.

Federal law provides anyone who seeks to import, manufacture, or deal in explosives must maintain a license. 18 U.S.C. § 843(a), (b). As a condition of licensure, each explosives dealer must follow ATF regulations. *Id.* § 843(d). If a licensee "willfully violate[s]" any federal explosives regulation, the ATF may revoke its license. 27 C.F.R. § 771.42 (2023); *see* 18 U.S.C. § 843(d).

Firestorm contends the Director's application of the willfulness standard was erroneous, so our review must begin with the meaning of "willful" used in 27 C.F.R. § 771.42 and defined in 27 C.F.R. § 771.5. Where, as here, we review an agency's interpretation of its own regulation, we apply the framework described in *Kisor* v. *Wilkie*, 139 S. Ct. 2400 (2019). Under *Kisor*, we ask first whether the regulations involved are "genuinely ambiguous"; if so, we will defer to an agency's reasonable interpretation. 139 S. Ct. at 2415. If we discern no genuine ambiguity, we go no further, and the "regulation then just means what it means—and the court must give it effect, as the court would any law." *Id.*

Here, the regulations provide the ATF may revoke the explosives license or permit of any holder that the agency has "reason to believe . . .

has willfully violated any provision of 18 U.S.C. chapter 40 or 27 C.F.R. part 555." 27 C.F.R. § 771.42 (2023). "Willfulness" is defined as "[t]he plain indifference to, or purposeful disregard of, a known legal duty. Willfulness may be demonstrated by, but does not require, repeat violations involving a known legal duty." 27 C.F.R. § 771.5 (2023).

Applying *Kisor*, we first ask if there is any "genuine ambiguity" in the definition of "willfulness" in 27 C.F.R. § 771.5. Neither party contends there is any genuine ambiguity.[6] And we likewise see nothing ambiguous about the definition of willfulness in § 771.5. The agency specifically defined willfulness in its regulations and did so in a manner consistent with accepted common meaning. *See Willfulness*, Black's Law Dictionary (11th ed. 2019) ("1. The quality, state, or condition of acting purposely or by design; deliberateness; intention. Willfulness does not necessarily imply malice, but it involves more than just knowledge. 2. The voluntary, intentional violation or disregard of a known legal duty."). Accordingly, "willful," as defined in 27 C.F.R. § 771.5 and used in 27 C.F.R. § 771.42, is unambiguous—it "just means what it means." *Kisor*, 139 S. Ct. at 2415.

---

[6] At oral argument, Petitioner confirmed Firestorm was not contending any ambiguity exists in the meaning of willfulness as defined in 27 C.F.R. § 771.5.

We next examine whether the Director's understanding of willful, as applied here, correctly adhered to the unambiguous definition provided by law. Reviewing the ALJ's decision, the Director determined, "the record establishes a pattern of repeated violations with knowledge of the law's requirements. As such, I find [the ALJ] properly concluded that those violations were willful." AR at 25.

We conclude the Director used the correct willfulness standard from 27 C.F.R. § 771.5 in applying 27 C.F.R. § 771.42. The Director explained the willfulness standard required "plain indifference to, or intentional disregard of, a known legal duty." AR at 19-20. This tracks nearly verbatim the language in 27 C.F.R. § 771.5, which defines willfulness as "[t]he plain indifference to, or purposeful disregard of, a known legal duty." The Director correctly understood and faithfully applied the definition provided by the appropriate regulations; therefore, we cannot describe the Director's application of the regulation as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

The Director's understanding of willfulness in the context of federal explosives law also comports with our analogous firearms caselaw addressing similar regulations promulgated by the ATF. For example, in *CEW Properties* v. *U.S. Department of Justice*, 979 F.3d 1271, 1279 (10th Cir. 2020), which involved a challenge to the ATF's revocation of a firearms

dealer's license, we explained, "[f]or a violation to be willful, [the licensee] must have (1) known and (2) been plainly indifferent to its legal obligations." And in *Borchardt Rifle Corp.* v. *Cook*, 684 F.3d 1037, 1042 (10th Cir. 2012), which involved the Bureau's interpretation of the Gun Control Act, we held "the willfulness requirement [of the similar Gun Control Act] is met by plain indifference toward known legal obligations." Our sister circuits have endorsed an analogous understanding of willfulness in the explosives and firearms-licensing context. *Vineland*, 544 F.3d at 518 (applying the same "willfulness" standard in firearms and explosives regulations); *DCV Imps.* v. *Bureau of Alcohol, Tobacco, Firearms & Explosives*, 838 F.3d 914, 917 (7th Cir. 2016) (same).

We thus discern no error in the Director's understanding and application of the willfulness standard. Firestorm makes several contrary arguments, but none is persuasive.

First, Firestorm contends the company's compliance efforts refute a finding of willfulness as a matter of law. This argument is unavailing.

The agency record confirms the Director acknowledged Firestorm attempted to comply with federal explosives regulations but concluded, in this case, compliance efforts were "irrelevant" to determining willfulness under 18 U.S.C. § 843(b)(2) and (d) and 27 C.F.R. § 771.42. AR at 22 (citing *Vineland*, 544 F.3d at 519). The Director did not err.

16

What Firestorm appears to read into the regulation is a rule obliging the Director to perform a balancing test where proof of compliance efforts necessarily "negates" a finding of willfulness. Appellant Br. at 20-23. Firestorm has cited no authority to support its position. And nothing in 27 C.F.R. § 771.42 aligns with Firestorm's interpretation. It is true a *different* regulation, 27 C.F.R. § 555.71, guarantees licensees "an opportunity to demonstrate or achieve compliance with all lawful requirements." But that regulation, as the Director and the Bureau observed, begins with the carveout, "[e]xcept in cases of willfulness." 27 C.F.R. § 555.71 (2023); AR 25-28; Appellee Br. at 2. This suggests the compliance inquiry—one focused on potential future compliance—is distinct from the willfulness determination—one oriented toward past action.[7] In other words, a licensee

---

[7] We find persuasive the Third Circuit's reasoning, cited by the Director:

> [The willfulness] determination is not based on the future conduct of the licensee, *i.e.*, whether it will 'willfully violate' the laws, and it is not based on a combination of the past, present, and future conduct of the licensee, *i.e.*, whether the licensee has 'willfully violated' the laws, is continuing to 'willfully violate' the laws, and will 'willfully violate' the laws tomorrow. Instead, the inquiry turns on the past conduct of the licensee. Based on [the] statutory language, the Director's conclusion—that the likelihood that the licensee will correct the violations is not relevant to whether the licensee has 'willfully violated' the regulations—is reasonable.

AR at 20 (quoting *Vineland*, 544 F.3d at 519) (internal citations omitted).

accused of willful violations—like Firestorm—is *not* guaranteed an opportunity for compliance under 27 C.F.R. § 555.71.[8] We thus cannot find it was legal error for the Director to determine, notwithstanding its compliance efforts, Firestorm was indifferent to, or intentionally disregarded, a known legal duty.

Next, Firestorm continues to emphasize it "has never been accused of engaging in deliberate wrongdoing, let alone found to have been engaged in intentional misconduct." Appellant Br. at 1. We agree with Firestorm: the record does not support it engaged in *intentional* wrongdoing. But as the Director correctly observed, willfulness for license revocation purposes does not demand bad intent. AR at 20 (quoting *DCV Imps.*, 838 F.3d at 917 ("[N]o showing of bad purpose or evil motive is required to establish willfulness, and no *de minimis* exception is available.")). What willfulness *does* require is indifference to, or disregard of, a known legal duty; and willfulness "may be demonstrated by, but does not require, repeat violations of a known legal duty." 27 C.F.R. § 771.5 (2023). Here, the Director observed Firestorm had confirmed the existence of its legal duties and understood its obligation to comply on four separate occasions. The Director also pointed out many of

---

[8] Certainly, there are occasions when compliance efforts will be relevant. *See* 27 C.F.R. § 555.71. In any case, Firestorm was afforded opportunities for compliance following the 2012 and 2016 inspections.

the fifteen Grounds for Revocation identified by the ATF in 2018 involved repeat violations of the very regulatory provisions for which Firestorm was cited after previous inspections.

Firestorm is correct "a licensee's repeated violations . . . do not necessarily compel a finding of willfulness as a matter of law." Appellant Br. at 20-21 (quoting *Jim's Pawn Shop, Inc.* v. *Bowers*, No. 7:05-cv-142, 2008 WL 11380095, at *2 (E.D.N.C. Jan. 2, 2008)). Though repeated violations of federal explosives regulations do not "compel" a finding of willfulness under 27 C.F.R. § 771.42, the regulatory scheme provides that repeated regulatory violations may demonstrate willfulness. *See* 27 C.F.R. § 771.5 (2023).

The Director correctly understood that under 27 C.F.R. § 771.42 and 27 C.F.R. § 771.5 willfulness means disregarding or behaving with indifference to known legal duties and may be evidenced by repeated violations of federal explosives regulations. We thus reject Firestorm's contention that the Director misapplied the willfulness standard.

## II

### The Director's Decision Is Supported By Substantial Evidence.

We next consider Firestorm's claim that the Director's revocation decision is unsupported by substantial evidence. "For the evidence to be 'substantial,' the agency's record must contain enough facts supporting the decision that a 'reasonable mind' could accept it as 'adequate to support

[the] conclusion.'" *Blanca Tel. Co.* v. *FCC*, 991 F.3d 1097, 1120 (10th Cir. 2021) (alteration in original) (quoting *Olenhouse* v. *Commodity Credit Corp.*, 42 F.3d 1560, 1581 (10th Cir. 1994)). Our review for substantial evidence proceeds under a "highly deferential" standard, *Wiransane* v. *Ashcroft*, 366 F.3d 889, 897 (10th Cir. 2004), and asks only whether the Bureau's evidence meets the threshold of "more than a scintilla but less than a preponderance." *U.S. Cellular Tel. of Greater Tulsa, LLC* v. *City of Broken Arrow*, 340 F.3d 1122, 1133 (10th Cir. 2003) (internal quotations omitted). "We will uphold the agency's conclusion that [the licensee] acted willfully if it is supported by substantial evidence." *DCV Imps.*, 838 F.3d at 917.

The Director observed, "it only takes one willful violation to sustain a revocation." AR at 11 n.6. Before this court, the ATF invites us to deny Firestorm's petition on the storage violations alone. Appellee Br. at 18-19 (citing 27 C.F.R. § 555.29). According to the Bureau, "Firestorm's leaders worked at a site 'littered' with 'active explosives'—yet failed to secure them. It is difficult to imagine a clearer case of 'plain indifference to . . . a known legal duty.'" *Id.* (quoting AR at 172, 1249; 27 C.F.R. § 771.5). Firestorm, however, contends remand is required unless we affirm the Director on every violation.

We agree with the ATF. The plain language of 18 U.S.C. § 843(d) permits revocation if the agency finds a willful violation of "*any* rule or regulation," (emphasis added), and 27 C.F.R. § 771.42 provides for revocation "[w]henever the [Director] has reason to believe that any holder of a license or permit has willfully violated *any* provision of 18 U.S.C. chapter 40 or 27 C.F.R. part 555 . . ." (emphasis added). We thus review for substantial evidence only the Director's determination that Firestorm willfully violated the regulatory provision governing storage requirements in 27 C.F.R. § 555.29, which commands "No person shall store any explosive materials in a manner not in conformity with this part [555]."[9]

Under 27 C.F.R. § 771.5, willful violations sufficient to warrant license revocation may be shown by "repeat violations involving a known legal duty." We therefore ask whether substantial evidence supports the Director's determination that Firestorm committed "repeat violations" of 27 C.F.R. § 555.29 and whether these repeat violations "involve[d] a known legal duty."

---

[9] We thus need not, and do not, pass on the alleged inventory, acquisition, or transfer violations. Because we affirm on the storage violations, even if we were to reach and find unlawful the Director's decisions on the inventory, acquisition, and transfer violations, we would still be compelled to deny the petition.

*First*, the agency record confirms Firestorm repeatedly stored explosive material not in conformity with the storage requirements in 27 C.F.R. § 555.29. In 2016 and 2018, the ATF inspected Firestorm and found unsecured "quick match remnants, igniters, and display shells" and "strewn about" explosives in the garbage, "under the [loading] dock" and outside magazines. Both times, Firestorm was cited for violating 27 C.F.R. § 555.29. AR at 230, 503, 512, 1244-49. After the 2016 inspection, the citation identified four instances of § 555.29 violations involving hundreds of cases of fireworks containing over nine tons of explosives and thousands of igniters. And in 2018, the citation included eight instances of § 555.29 violations involving at least sixty pounds of explosives and thousands of igniters.

*Second*, the agency record further confirms Firestorm knew of its legal duty to comply with the storage requirements mandated by federal explosives law. By the time of the 2018 inspection, it had signed *four* Acknowledgments of Federal Explosives Regulations. These Acknowledgments specifically alerted Firestorm to its federally mandated legal duty concerning storage of explosive material and, in signing these Acknowledgments, Firestorm certified its "responsib[ility] for familiarizing [itself] with all of the laws and regulations" governing its business. AR at 494. After the 2016 inspection, when it was cited for violating 27 C.F.R.

§ 555.29, Firestorm "acknowledge[d] that certain discrepancies and issues ha[d] been identified . . . [and] recognize[d] its obligation to fully comply with the regulations" of which it was indisputably aware. AR at 512.

We thus conclude substantial evidence supports the Director's findings that Firestorm knew of its obligation to store explosives in accordance with 27 C.F.R. § 555.29, that Firestorm repeatedly violated these regulatory storage requirements, and that these repeated violations were willful.

## CONCLUSION

We are sympathetic to Mr. Shriber, his employees, and the manifold challenges faced by small businesses like Firestorm. The governing law, however, confines us to a careful, but narrow, review of the basis for the agency's action. Under 5 U.S.C. § 706, we may ask only whether the Director's revocation decision was in accordance with law and supported by substantial evidence. Finding it was, we DENY Firestorm's petition for review of the Director's order.